Peter TAILLIE and Paul Taillie, Plaintiffs-Appellees,

v.

K. Q. CHEDESTER and Jerry Hankins, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

Jan. 30, 1980.

Certiorari Denied by Supreme Court May 5, 1980.

William H. Goddard, with Strand & Goddard, Dandridge, for defendants-appellants.

David A. Burkhalter, Knoxville, for plaintiffs-appellees.

## OPINION

SANDERS, Judge.

The Plaintiffs-Appellees, Peter Taillie and Paul Taillie, sued the Defendant-Appellant, K. Q. Chedester, and Defendant Jerry Hankins, for the value of certain cabinets built for installation in a residence being constructed for Defendant Chedester. The suit originated in the general sessions court and the pleadings are sparse. However, the case was tried on the theory by the Plaintiffs that they constructed the cabinets at the request of Defendant Chedester's agent, Lea Young, and the value of their material and labor was $1,296.93. Plaintiffs also contended the Defendant, Chedester, had a contract with Defendant Hankins to complete the residence and if Defendant Chedester is not to be held personally liable then Defendant Hankins is liable as a general contractor.

Defendant Chedester's defense was he did not authorize Lea Young to order the cabinets on his behalf; the cabinets were not built in a workmanlike manner; the charges were excessive; and Defendant Hankins was liable under his contract for any amount owed to the Plaintiffs.

Defendant Hankins' contention was the cabinets were not included in the plans and specifications covered by his contract. The agreement for making the cabinets was between the Plaintiffs and Lea Young, agent of Defendant Chedester, and he, Hankins, was not a party to the agreement.

The case was tried before the circuit judge without a jury. He found the issues in favor of the Plaintiffs and against the Defendant, Chedester, allowing a recovery of $600. In his determination of the case the court said he found there was an implied contract between the Plaintiffs and Defendant Chedester.

Defendant Chedester has appealed, insisting the court was in error.

Some time prior to the time the Plaintiffs had been asked to build the cabinets, the Defendants, Chedester and Hankins, had entered into an agreement for Defendant Hankins to complete the construction of a residence for Defendant Chedester. The construction was to be completed according to certain plans and specifications.

The Defendant, Chedester, and Miss Lea Young were engaged to be married and were planning to live in the house upon its completion. After Defendant Hankins started work on the house Miss Young was constantly present at the construction site.

She frequently directed that changes be made, resulting in deviations from the original plans and frequently in additional expenses. These changes were not questioned by the Defendant, Chedester, and as bills were submitted to him for the additional charges, they were paid. Miss Young was regarded by Defendant Hankins and his foreman as speaking for Mr. Chedester.

Miss Young decided she wanted to make rather extensive changes in the cabinets to be installed in the laundry room. She drew detailed plans of what she wanted and showed them to Mr. Hankins. He told her he could not make the cabinets but he knew someone who probably could. He then contacted the Plaintiffs and arranged a meeting between them and Miss Young at the house which was under construction. The Plaintiffs testified that at this meeting Miss Young asked them how much the cabinets would cost. They told her they didn't know but would estimate they would run around seven or eight hundred dollars. Miss Young was anxious to have the cabinets completed as soon as possible and told them to go ahead and build them. When they realized the cabinets were going to exceed their estimate they tried to contact both Miss Young and Mr. Chedester but were unsuccessful. The cabinets were completed and delivered to the house for installation.

Plaintiffs also testified their agreement concerning the cabinets was with Miss Young and not with Mr. Hankins. They said Mr. Hankins acted as a "go-between", getting them in touch with Miss Young. They further testified they were familiar with Miss Young's activities in connection with the construction of the house and they assumed she was acting for Mr. Chedester.

Miss Young testified she did tell the Plaintiffs to go ahead and build the cabinets. She did not remember whether or not she had asked them what the cost of the cabinets would be. She said she thought Defendant Hankins would be required to pay for the cabinets under the terms of his contract.

The Defendant, Chedester, testified his contract with Mr. Hankins was for $6,200.

During the course of construction he had paid him approximately $12,000 which included extras and work done by subcontractors. He had an agreement with Mr. Hankins that when changes were to be made the cost of the changes was to be agreed on in advance. He said Miss Young was on the job supervising the completion contracted for. The tenor of his testimony is to the effect that she had no authority to authorize any changes which would incur additional expense without his prior approval. We do not construe his testimony as saying she had no authority to authorize changes which did not entail additional expense.

We find the testimony of Mr. Hankins as to what happened during the course of construction to show that Miss Young did authorize many changes and they were paid for where no prior approval had been given by Mr. Chedester. The evidence is without material dispute that Plaintiffs' dealings with reference to the building of the cabinets were with Miss Young. The Plaintiffs, in turn, based on their knowledge of her activities in connection with construction of the house, regarded her as the agent of Mr. Chedester.

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. So far as concerns a third person dealing with an agent, the agent's 'scope of authority' includes not only the actual authorization conferred upon the agent by the principal, but also that which has apparently been delegated to him. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority,

and it may apply to a single transaction, or to a series of transactions." 3 Am. Jur.2d, Agency, § 73 page 475.

 We think the proof warrants a finding that Miss Young had such apparent authority to act for Mr. Chedester that the Plaintiffs were justified in relying upon it.

The Appellant argues, in his brief, that Mr. Hankins employed the Plaintiffs to do the work. We do not think this is supported by the proof.

Appellant also argues the court was in error in finding there was an implied contract between the Plaintiffs and Mr. Chedester because there was an express contract between Mr. Chedester and Mr. Hankins. He cites, in support of his insistence, the case of *Hill v. Childress*, 18 Tenn. 514, which holds there can be no implied contract where there exists a valid express contract on the same subject matter.

The *Hill* case is not controlling in the case at bar since we are here dealing with two separate contracts and with two separate contractors.

The issues are resolved in favor of the Plaintiffs-Appellees and the judgment of the trial court is affirmed. The cost of this appeal is taxed to the Appellant.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.