**JOHN J. HEIRIGS CONSTRUCTION COMPANY, INC., Plaintiff-Counterdefendant, Appellee,**

v.

**EXIDE, A Corporation of Inco Electro Energy and the Electric Storage Battery Company, Defendants-Counterplaintiffs, Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 7, 1986.

Application for Permission to Appeal Denied by Supreme Court March 24, 1986.

Phillip H. Galloway, Jr., Memphis, for plaintiff-counterdefendant, appellee.

Albert C. Burnham, Memphis, for defendants-counterplaintiffs, appellants.

CRAWFORD, Judge.

Plaintiff John J. Heirigs Construction Company, Inc., sued defendants, Exide and the Electric Storage Battery Company for a money judgment and to enforce its mechanic's lien. The Chancery Court, sitting without a jury, awarded plaintiff a money judgment, but denied plaintiff a mechanic's lien and defendants appeal.

Plaintiff's complaint alleges that defendants owned real estate in Shelby County and that improvements were made on the property by Synergo, Inc., under a contract with the defendants, and that plaintiff furnished labor and material incorporated into the improvement pursuant to Synergo's purchase order issued to plaintiff, which provides in pertinent part:

CONFIRMING ORDER—DO NOT DUPLICATE Confirming telephone conversation between our Mr. E.B. DeLuca and Mr. J. Heirigs, Nov. 25, 1981.

Furnish all labor, material, applicable taxes, fees, and insurance to complete the Work as itemized on the attached Phase I Specification (Revised November 2, 1981) for the Effluent Treatment Facility to be installed at the Exide Corporation Memphis Plant, 3454 Chelsea Avenue, Memphis, Tennessee 38108.

A Performance Bond will be furnished for the Contract amount.

Delivery of metal building—5 weeks. Project completion 8 to 10 weeks, subject to lost time due to winter weather conditions.

Time shall be of the essence of this Agreement. Contractor agrees to prosecute the Work continuously and diligently following the notification of award.

This Purchase Order is issued in accordance with the attached documentation:

a. Drawing No. M-1, Rev., O

b. Phase I Specification (Revised 11/2/81)

c. John J. Heirigs Construction Co., Inc. Proposal.

d. Synergo, Inc. Standard Terms and Conditions for Field Construction Contract

| | |
|---|---|
| All the above in accordance with your proposal of October 30, 1981 ................... | $109,459.00 |
| Addition for 1½ inch grating (telephone quote 11/2/81) ..... | 386.00 |
| Addition to complete electrical work. Rewire two (2) existing agitator motors (telephone quote 11/3/81) .............. | $   350.00 |
| TOTAL | $110,195.00 |
| Addition for Professional Seal if required | 750.00 |
| TOTAL This Purchase Order | $110,945.00 |

REF. Exide PH47057

The Standard Terms and Conditions for Field Construction Contract forming a part of the purchase order, as pertinent here, specifically provide:

4.17 Covenant Against Mechanics' Liens. The Contractor covenants that neither it nor any Subcontractor, materialman, or any other person furnishing labor, material and services or any of them, shall have, file or maintain a mechanic's or material's lien for materials delivered for use in, or for work done in, the performance of the Contract; and the right to have or maintain such lien against the premises, against materials, fixtures, apparatus or machinery furnished, or against any moneys or other sums due or to become due the Contractor under the provisions of the Contract,

by any or all of the above named parties shall be, and is hereby expressly waived.

Plaintiff asserts that it is entitled to a mechanic's lien for the balance unpaid by Synergo and further avers that the purchase order was issued by Synergo as the agent of the defendants and that the defendants are bound on the purchase order contract.

Defendants filed an answer and counterclaim asserting that plaintiff had executed a written general release and had waived all claims against defendants, that plaintiff did not comply with the notice requirements of the mechanic's lien statutes and had waived the right to claim such liens by virtue of its contract with Synergo, denying that Synergo was defendants' agent, denying that defendants were bound on Synergo's contract with plaintiff and denying that plaintiff was entitled to any recovery against it or entitled to a lien on defendants' property. Defendants also filed a counterclaim against plaintiff seeking damages allegedly incurred in defending against the claimed mechanic's lien which defendants aver was wrongfully filed against them.

Prior to issuing the purchase order, on which suit is brought, to plaintiff, Synergo itself received a purchase order from Exide covering the project and providing in pertinent part:

Synergo will provide the following items and they will become the "Contract Documents.":

- Appendix A—Revised 2 November, 1981—Project # 81500
- Project Sketch
- Revised Building Specifications
- All insurance documents as per agreement
- * Waivers of Liens (see below)
- Payment for this project will be made in four (4) equal installments of $34,252.25.* The "final payment" will not be made until all waivers of liens are held by EXIDE Corporation. SYNERGO, Inc. will submit, along with their

invoice, a transmittal of all payments to contractors/subcontractors.

- *All* change orders for amounts greater than $300.00 will be handled by a separate Purchase Order from EXIDE Corporation. Corporate Purchasing # 5 Penn Center.
- *All* travel expenses relating to this project by SYNERGO, Inc. will be handled on a Purchase Order from EXIDE Corporation.
- SYNERGO, Inc. does not guarantee the pH system. This project and its reliability are the sole responsibility of EXIDE Corporation.

To perform specific construction as outlined in Appendix "A" (attached).

| | |
|---|---|
| . Building per quotation by Heirigs Construction and in accordance with revised building specifications (attached) | 109,459. |
| . Professional Seal | 750. |
| . Grating up to 1½" | 400. |
| . Electrical wiring for two (2) agitators | 400. |
| TOTAL | 111,009. |
| . Acid Dump Station Pump—two (2) per space. | 7,000. |
| . SYNERGO Management fee—NOT TO EXCEED | 19,000. |
| GRAND TOTAL | 137,009. |

THE DATE OF COMPLETION ON THIS PROJECT IS TO BE NO LATER THAN 1, APRIL, 1982.

At the conclusion of the proof the trial court found that Synergo was acting as the agent of Exide and that plaintiff should recover on the theories of quantum meruit and unjust enrichment. The court further found that plaintiff had waived its lien. The court entered judgment against the defendants for a total of $35,135.04 as the balance due plus prejudgment interest. Defendants have presented several issues which we rephrase as follows:

1. Whether the Chancellor erred in holding that plaintiff could recover on the theories of unjust enrichment and quantum meruit?

2. Whether the evidence preponderates against the finding of the Chancellor that Synergo was the agent of defendants?

3. Whether the Chancellor erred in holding the release executed by plaintiff to be null and void?

4. Whether the Chancellor erred in holding against defendants on the counterclaim.?

Plaintiff presents for review the issue: whether the Chancellor erred in holding that plaintiff had waived its lien?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

We will now consider the issues.

1. Whether the Chancellor erred in holding that plaintiff could recover on the theories of unjust enrichment and quantum meruit?

■ Defendants assert that the Chancellor's judgment allowing recovery on the theories of quantum meruit and unjust enrichment is void because there were neither allegations nor proof introduced at trial on these theories. Defendants further assert that in any event there was no evidence introduced to support a judgment on either theory. We agree with defendants on both assertions. Our review of the record revealed neither allegations nor proof that recovery should be allowed on the basis of either unjust enrichment or quantum meruit. Both allegations and proof are essential to a decree or judgment and there can be no valid decree unless the matter on which the decree is rested is plainly within the scope of the pleadings. *Fidelity-Phenix Fire Ins. Co. of New York v. Jackson,* 181 Tenn. 453, 463, 181 S.W.2d 625, 629 (1944); *See Cardwell v. Hackett,* 579 S.W.2d 186 (Tenn.App.1978).

■ Aside from the fact that plaintiff did not proceed on the theories of quantum meruit and unjust enrichment, the proof before the trial court precludes a recovery on those theories. The defendants, as owners of the property, paid Synergo, the party with whom it contracted, the entire amount due for the improvements made. Quantum meruit is an equitable doctrine that one should not be unjustly enriched by the labor and materials of another, and thus the law implies a promise to pay a reasonable amount therefor. Concerning this implied promise or quasi contract, our Supreme Court stated in *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150 (1966):

> The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher.

*Id.* at 57; 407 S.W.2d at 155.

■ In the case before us it is uncontroverted that the defendants paid the full contract price for the improvements to the property. Thus, under no stretch of the imagination could it be said that the defendants were unjustly enriched nor could it be said that equity demands that defendants be required to pay twice. Furthermore, the record is silent on the value of the benefit conferred on defendants. Plaintiff's case was premised on the balance due on the contract price. If plaintiff is to recover on the theories of quantum meruit and unjust enrichment it must carry the burden of proving the value of the work performed. *See Moyers v. Graham,* 83 Tenn. 57 (1885); *Sadler v. Middle Tennessee Electric Membership Corp.,* 36 Tenn.App. 495, 259 S.W.2d 544 (1952). The trial court erred in allowing recovery on the theories of quantum meruit and unjust enrichment.

2. Whether the evidence preponderates against the finding of the Chancellor that Synergo was the agent of defendants?

■ Defendants assert that there is no proof in the record supporting the Chancellor's finding that Synergo was the agent for defendants. The Chancellor based his finding on a statement in the purchase order from Synergo to plaintiff that Synergo was acting as agent of Exide, and also

on several references in the Standard Terms and Conditions for Field Construction Contract, which formed a part of the purchase order, that Synergo, as engineer, was acting as agent for the owner. From our review of the record, this constitutes the entire proof concerning the question of whether Synergo was the agent of Exide. According to the testimony of defendants' representative, the contract from the defendants to Synergo was for a "turn key" project and the defendants had no right of control over Synergo's performance of the contract to obtain that result. The right of control is the primary or essential test of an agency relationship without which no agency exists. *Nidiffer v. Clinchfield R. Co.*, 600 S.W.2d 242, 245 (Tenn.App.1980).

■ There was no contention on the part of plaintiff that the defendants in any way held Synergo out as its agent or misled the plaintiff into believing that Synergo was the defendants' agent. As noted, the only proof in the record of agency is the proof attributed to Synergo, the alleged agent, by virtue of the language in the contract documents between Synergo and plaintiff. Agency must be proved by the party asserting it, and may not be proved solely by the statements of the agent. *Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572 (Tenn.App.1979); *Robertson v. Lyons*, 553 S.W.2d 754 (Tenn.App.1977).

From the record before us we find that the evidence preponderates against the Chancellor's finding that Synergo was acting as the agent of the defendants. Therefore, there is no direct contractual relationship between plaintiff and defendants which would allow plaintiff to recover a money judgment from defendants.

■ Having determined that plaintiff is not entitled to a personal judgment against defendants, we must now consider the issue presented by plaintiff: whether the Chancellor erred in holding that plaintiff had waived its lien. In this regard, we quote from the Chancellor's findings of fact:

A much more serious question arises in connection with the waiver of liens provi-

sion in the Standard Terms and Conditions for Field Construction Contract of Synergo, Inc., the agent of Exide. While the plaintiff construction company did not sign this instrument it was included by reference in the Purchase Order and Mr. Mike Bass, who acted as Project Manager for the plaintiff corporation, testified that he knew of the provision for the waiver of liens and proceeded with the work under these conditions. There was a provision in Section 2.2 of the Terms and Conditions which provided that the documents should be construed in accordance with the laws of Pennsylvania. Pa.Stat.Ann. tit. 49, § 1401 (Purdon 1965) provides, "A contractor or a subcontractor may waive his right to file a claim by a written instrument signed by him or by any conduct which operates equitably to estop such contractor or subcontractor from filing a claim. (Underscoring supplied) Since the plaintiff proceeded with knowledge of the waiver provision of the liens in the Purchase Order attachments, this court feels it has no alternative but to hold that they waived their right to the lien....

Waiver is an intentional relinquishment of a known right. *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384 (1942). From our review of the record it is clear that the contract between Synergo and plaintiff establishes a waiver of plaintiff's lien. Plaintiff seeks recovery on the contract, but at the same time wants to disavow the unfavorable provisions of said contract. The evidence does not preponderate against the Chancellor's finding that plaintiff waived its mechanic's lien.

In view of our decision we do not find it necessary to consider defendants' third issue, but will now consider defendants' final issue: whether the trial court erred in dismissing defendants' counterclaim.

■ Defendants' counterclaim sought damages from plaintiff because plaintiff filed a lien and commenced the action to enforce it in breach of its contract waiving its lien. The contract between Synergo

and plaintiff provides, and the parties stipulated, that Pennsylvania law controls the interpretation of the contract, and defendants assert that since Pennsylvania recognizes a cause of action for breach of an agreement to waive mechanic's liens, defendants are entitled to recover their attorneys' fees and costs incurred in defending the mechanic's lien action as damages arising from the plaintiff's breach. We disagree. In Pennsylvania, as in Tennessee, there is a cause of action for breach of contract. However, defendant has not cited any case in Pennsylvania, nor has this Court become aware of any such case, that allows, as damages for the breach, recovery of the attorneys' fees incurred in defending an action seeking to impose a lien on the property. In *Malin v. Nuss*, 234 Pa.Super. 259, 338 A.2d 676 (1975), the court held that under the Pennsylvania mechanic's lien statute there is a cause of action in assumpsit for breach of an agreement to waive a mechanics' lien. However, as pointed out in the concurring opinion, "We need not and do not, decide which, if any, types of damages are probably recoverable in such a suit." *Id.* at 680.

In the absence of a showing to the contrary, we presume that Pennsylvania law is the same as that of Tennessee. *Hamilton v. Peoples*, 38 Tenn.App. 385, 274 S.W.2d 630 (1954). In Tennessee, it is well established that in the absence of a statutory or contractual agreement between the parties, allowance of attorneys' fees as part of damages recoverable is contrary to the public policy of the state. *Thayer v. Wright Company*, 50 Tenn.App. 515, 362 S.W.2d 805 (1961).

In *Stringfield v. Hirsch and Neal v. Neal*, 94 Tenn. 425 (1895), our Supreme Court, in holding that attorneys' fees are not a proper element of damages for wrongfully suing out an attachment or injunction said:

> It is difficult to see upon what ground counsel fees incurred by the adverse party should be charged up to the defeated party any more in attachment and injunction cases than in other litigations upon contracts or for damages for torts. The litigation may be equally unjust and oppressive in other cases as in the case of attachments and injunctions. It is true, the latter cases are, in some respects, more summary, and may entail damages arising out of the seizure of defendant's property; but all this is provided for by the terms of the bond required to cover damages sustained. But counsel fees are as necessary in the one class of cases as in the other, and are neither peculiar nor more onerous in cases of attachments and injunctions than in other cases.

*Id.* at 436.

Accordingly, we hold that defendants' counterclaim was properly dismissed.

In summary, the judgment of the trial court is reversed, and plaintiff-appellee's suit is dismissed. Costs are assessed against appellee.

TOMLIN, J., and MATHERNE, Special Judge, concur.