IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2001 Session

# MILLIKEN GROUP, INC. v. HAYS NISSAN, INC.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 99-170-I    Irvin H. Kilcrease, Jr., Chancellor**

───────────

**No. M2001-00506-COA-R3-CV - Filed December 13, 2001**

───────────

This dispute arises from a contract for capital improvements entered into between the plaintiff and the agent of the defendant. The primary issues on appeal are whether the agent had the authority to bind the defendant to the contract, and whether the trial court erred in limiting the amount of damages awarded to the plaintiff. We affirm in part and modify the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Modified in part; and Remanded.**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

William P. Jones, Hendersonville, Tennessee, for the appellant, Milliken Group, Inc.

Todd E. Panther, Nashville, Tennessee, for the appellee, Hays Nissan, Inc.

**OPINION**

In the Fall of 1998, Mr. Barry Busby, the general manager of Hays Nissan in Madison, Tennessee, entered into a contract with the Milliken Group, Inc. ("Milliken") for land improvements at the site of the dealership. This was an oral contract based upon a three part bid submitted by Milliken. Part one of the bid quoted a price of $35,000. Parts two and three quoted unit prices based on yardage and tonnage, respectively. Ultimately, the work necessary to complete the improvements resulted in charges of over $130,000, including the cost of equipment and materials needed to fill-in an area in back of the dealership referred to by the parties as "Jurassic Park."

Hays Nissan does not dispute that the work was performed as charged, nor does it contend that it was less than satisfactory. What is at dispute in this case is whether Mr. Busby had the authority to bind Hays Nissan to the contract with Milliken, and, if so, the extent of that authority.

The chancellor found that while Mr. Busby had apparent authority to enter into the contract with Milliken, his authority was limited to the $35,000 figure quoted in part one of the October bid. Judgment was awarded against Hays Nissan in the amount of $35,000. On appeal, Milliken argues that this limitation is in error in light of the finding of apparent authority. Hays Nissan, on the other hand, argues that the finding of apparent authority was in error and, alternatively, that if Mr. Busby did have the authority to enter into the contract, his authority was limited to the $35,000 figure.

### *Issues*

The issues we are called upon to address, as we perceive them, are first: whether Mr. Busby had authority to bind Hays Nissan in contract to Milliken; second: if so, whether that authority extended to authorizing costs clearly exceeding those initially anticipated; third: if such authority is found, whether the judgment award should be limited to $35,000.

### *Standard of Review*

This was a nonjury trial, thus our standard of review is *de novo* upon the record. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

The threshold question in this case is whether Mr. Busby had authority to enter into the contract with Milliken on behalf of Hays Nissan. At trial, Milliken argued that Mr. Busby had actual authority, or at least apparent authority, to contract with Milliken for the work performed. The trial court concluded that Mr. Busby had apparent authority to enter into the contract with Milliken. The court based this finding on testimony by Mr. Busby regarding conversations which he had had with Mr. Paul Spina, then the corporate secretary of Hays Automotive Group,[1] its leading shareholder, and an owner of the land on which the dealership is located. We agree to the extent that the trial court found that Mr. Busby had authority to bind Hays Nissan to the contract in this case. Upon review of the record, however, we believe that a preponderance of the evidence supports a finding that Mr. Busby acted with actual rather than apparent authority to enter into the contract with Milliken.

"An agent's authority is composed of his actual authority, express or implied, together with the apparent or ostensible authority which the principal by his conduct precludes himself from denying . . . . Generally, an agent has such authority as the principal either actually or ostensibly confers upon him . . . ." 2A C.J.S. *Agency* § 146 (1972). The actual authority of an agent "consists of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess . . . ." *Id.* at § 147. Actual authority flows from the manifestations of the

---

[1]Hays Automotive Group is the parent company of Hays Nissan.

principal to the agent.  ***Id.***  If an agent acts with actual authority, then he may bind the principal in contract regardless of whether the third party is actually aware of that authority at the time of the transaction.  ***See McConnico v. Third Nat'l Bank***, 499 S.W.2d 874, 883 (Tenn. 1973).

At trial, Mr. Busby testified that during the Fall of 1998, he and Mr. Spina discussed improvements to be made to an unimproved, densely over-grown area behind the dealership known as "Jurassic Park."  The discussions centered on an area five to six feet deep, which Mr. Busby wanted to clear to provide more space behind the body shop at the dealership.  During the course of these conversations, Mr. Busby obtained three bids for the work and was told by Mr. Spina to "[q]uit trying to sell me, just get it done."  Mr. Busby further testified that he submitted the bids to Mr. Spina, and that Mr. Spina chose Milliken to perform the work.  Based upon his conversations with Mr. Spina, Mr. Busby then told Milliken, "You got the job."

Hays Nissan argues that Mr. Busby acted without authority when he contracted with Milliken.  Mr. Dan Bouchillon, vice president of Hays Automotive Group, testified that the corporate officers were still in the process of deciding on a course of action when they received a bill for over $130,000 for the work performed by Milliken.  Mr. Bouchillon testified that general managers of its dealerships do not have authority to make decisions or to enter into contracts regarding capital expenditures.  He testified that he personally took part in Mr. Busby's training when Mr. Busby became general manager of the dealership in the Spring of 1998, and that Mr. Busby was aware of the corporate policy limiting the expenditures which could be authorized by general managers to under $10,000.  The Hays Group by-laws and several memos from corporate office to the dealerships were placed into evidence to affirm this corporate policy.

Mr. Bouchillon's testimony and our review of the record, including the by-laws of the Hays Automotive Group, supports a finding that general managers generally do not have unlimited authority to bind the Group or its dealerships to major contracts such as the one in question.  However, testimony at trial, including Mr. Bouchillon's testimony, together with the Hays Automotive Group documents entered into evidence, leave no doubt that whatever the general corporate policy of the Hays Group, Mr. Spina, as a director and officer, had the power to approve expenditures and to authorize the formation of contracts such as the one in this case.  Mr. Busby, moreover, testified that he knew he did not have authority to enter into the contract before speaking with Mr. Spina, but that his authority stemmed from his conversations with Mr. Spina after he had submitted the bids.

In reviewing the record, we find nothing to dispute or challenge Mr. Busby's testimony regarding his conversations with Mr. Spina, or the content of those conversations.  Mr. Bouchillon, the primary witness on behalf of the Hays Group, testified that he had no knowledge of what Mr. Busby and  Mr. Spina spoke about during their meetings in the Fall of 1998.  He also testified that after the work was complete and the bill received, Mr. Spina was the only one to meet with Mr. Busby to discuss the charges.  While Mr. Bouchillon testified that he had no notice that Mr. Spina or anyone else had given Mr. Busby permission to proceed with the work in question, he also stated that as of the time of  trial he had never spoken with Mr. Busby about the matter, and that he did not

in fact know whether Mr. Spina had. There is nothing in Mr. Bouchillon's testimony to indicate that he had any direct knowledge whatsoever as to whether Mr. Spina authorized Mr. Busby to enter into the contract with Milliken. When asked at trial if he had any knowledge of whether or not Mr. Spina authorized Mr. Busby to proceed with the contract, Mr. Bouchillon replied, "No."

The only person who could contradict Mr. Busby's testimony that Mr. Spina told him to proceed with this contract is Mr. Spina himself, and we note that, as counsel for Milliken points out, the Hays Group did not call Mr. Spina to testify at trial. A party's failure to call a witness with particular knowledge of the facts, who would naturally favor that party's position, and who is not unavailable, generally raises an inference that the testimony would have been unfavorable to the party who failed to call that witness. *See* Neil P. Cohen et al, *Tennessee Law of Evidence* § 4.01[14][a] (4th ed. 2000); *State v. Bigbee,* 885 S.W.2d 797 (Tenn. 1994). Mr. Bouchillon testified that Mr. Spina is 45 years old, in good health, and resides in Louisville, Kentucky, where the Hays Group is headquartered and where Mr. Spina resided during his tenure with the Hays Group. There is nothing in the record or offered by the Hays Group to indicate that Mr. Spina was unavailable or unable to testify at trial. In fact, there is nothing in the record as a whole to contradict Mr. Busby's testimony that Mr. Spina authorized him to proceed with the contract with Milliken. Read as a whole, we find the evidence preponderates to support a finding of actual authority for Mr. Busby to contract with Milliken to perform the work as described in the bid submitted by Milliken in October of 1998.

Having found that Mr. Busby had been given actual authority by Mr. Spina to enter into the contract with Milliken, we find it unnecessary to address the arguments pertaining to apparent authority insofar as they concern this threshold question. We must next consider, however, the extent of Mr. Busby's authority. The scope of an agent's authority is determined from the facts and circumstances in evidence. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984).

We first consider whether Mr. Busby had actual authority to approve extension of the work performed by Milliken beyond the scope of what was initially anticipated. We find that Mr. Busby did not have such actual authority. At trial, Mr. Busby testified that when he and Mr. Spina discussed work to be performed to the "Jurassic Park" area, they discussed an area approximately five to six feet deep. Mr. Busby further testified that he never discussed filling in the entire area with Mr. Spina, and that he acted on his own in approving the increased amounts of work. Thus while Mr. Spina gave Mr. Busby the actual authority to enter into the contract based upon the October bid for work to a portion of the "Jurassic Park" area, it is clear to this Court that Mr. Busby did not have actual authority to approve the extent of the work performed by Milliken.

We must therefore determine whether Mr. Busby was cloaked with apparent authority to approve the work as performed. Apparent authority rests on principles of estoppel. 2A C.J.S. *Agency* § 157(c) (1972). Apparent authority is "that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence." *Id.* at § 157(a). Apparent authority must be established through the acts of the principal, rather than those of the agent. *Bells*

***Banking Co. v. Jackson Centre Inc.***, 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996). Apparent authority is found where the principal, by his own acts or conduct, has clothed the agent with the appearance of authority. Having cloaked the agent with authority, the principal is accordingly estopped from denying liability for the acts of an agent acting within that authority. ***See id.*** at 425 (quoting ***Southern Ry. Co. v. Pickle***, 197 S.W. 675 (1917)). In order to establish apparent authority, the plaintiff must prove that "(1) the principal actually or negligently acquiesced in [the agent's] exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." ***White v. Methodist Hosp. S.***, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992).

If a principal has cloaked an agent with apparent authority, then the principal is liable when the agent exercises that authority.

> The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. So far as concerns a third person dealing with an agent, the agent's "scope of authority" includes not only the actual authorization conferred upon the agent by the principal, but also that which has apparently been delegated to him . . . . In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions.

3 Am. Jur. 2d ***Agency*** § 78 (1986). ***See Taillie v Chedester***, 600 S.W.2d 732, 734-35 (Tenn. Ct. App. 1980).

The question thus becomes whether, by endowing Mr. Busby with actual authority to enter into the contract with Milliken based upon the October bid, Mr. Spina cloaked Mr. Busby with the apparent authority to authorize work in excess of the amount originally anticipated. It is undisputed that Mr. Spina never had conversation or direct contact with anyone from the Milliken Group which would lead Milliken to believe that Mr. Busby had such authority. Thus we must consider whether the act of granting Mr. Busby the actual authority to contract in the first instance is sufficient to warrant the belief by Milliken that Mr. Busby had the authority to authorize the work as performed.

In reviewing this issue, we are mindful of the fact that the bid for the work at issue was not limited to a particular dollar figure or amount of work. Contrary to the finding of the trial court that the original bid was for $35,000, the bid submitted by Milliken contains no exact dollar figure or precise description of the amount of work to be done. Part one of the bid is for $35,000; part two is for "miscellaneous repair" at $23.50 square yard; part three is for "[s]tone in place, grading and compacting" at $12.50 per ton. It is parts one and three that are at issue here.

It is clear that once the work at the Hays Nissan site began, the project became more extensive than either Mr. Spina, Mr. Busby or Milliken had anticipated.  Mr. Milliken, owner of the Milliken Group, testified that he knew that Mr. Busby had to have approval from corporate headquarters to enter into the contract, but that Mr. Busby never led him to believe that he did not have authority to authorize the continuation of the work.  Further, Milliken testified that he had previously done work for another Hays Automotive Group dealership, and that he had dealt exclusively with that dealership's general manager.  It is undisputed that Milliken advised Mr. Busby when the project reached the $50,000 and $80,000 marks, and asked him if he should proceed.  Mr. Busby testified that he told Milliken to continue.  Mr. Busby further testified that he believed he had the authority to tell Milliken to continue.

Although Mr. Spina never approved or authorized the expenditure of over $130,000, there is nothing in the record to indicate that Mr. Spina placed any limitations on Mr. Busby once he told Mr. Busby to proceed  and "just get the job done."  It is uncontradicted, moreover, that Mr. Busby forwarded the bid to Mr. Spina, and that Mr. Spina was thus aware of the inexact nature of the bid. It is also undisputed that at the time Mr. Busby and Mr. Spina discussed the work to be done to the "Jurassic Park" area, neither they nor Milliken ever actually walked through the area or understood exactly what the work would entail or the nature of the difficulties which might be encountered. Nevertheless, Mr. Spina authorized Mr. Busby to proceed based on what was essentially an open ended bid.  Moreover, as noted, Mr. Busby testified that he believed that he had the authority to approve the continued work, and assured Milliken that he in fact had such authority.

We therefore hold that Mr. Spina, having knowingly endowed Mr. Busby with actual authority to enter into a contract based upon the bid submitted, cloaked him with the apparent authority to authorize Milliken to continue working based on the terms of the bid.  By failing to communicate any limitations to either Mr. Busby or Milliken, Mr. Spina  acquiesced in the exercise of authority by Mr. Busby.  Milliken acted in good faith, believing that Mr. Busby possessed the authority to authorize the work to continue.  This belief was rooted not only in Mr. Busby's statements, but in approval by Mr. Spina of the bid as submitted, and in Mr. Spina's failure to communicate any limitation to either Mr. Busby or Milliken.  Milliken's reliance on Mr. Busby's apparent authority was further justified by the fact that Milliken had previously performed work for another dealership owned by the Hays Automotive Group, and at that time dealt exclusively with that dealership's general manager.[2]

---

[2]Hays Nissan submits that the fact that it does not own, lease or control the area known as "Jurassic Park" is proof that it is not liable for work done to the property.  Hays Nissan argues that, under the law of agency, in order to hold Hays Nissan liable for work performed to property owned by a third party, JAS Realty, Milliken would have to show that Hays Nissan was the agent for an undisclosed principal, JAS Realty.  We find this argument unconvincing in light of the fact that JAS Realty is owned in part by Mr. Paul Spina.  Second, we note that while Hays Nissan leases approximately four and one-half acres of the nine acre track owned by JAS Realty, the dealership does in fact use additional areas.  Finally, we note that Mr. Bouchillon testified that a general manager would not know who owns or leases the property on which a dealership is situated.  Given these facts, it does not seem unlikely that Mr. Spina, an owner of both the Hays Automotive Group and JAS Realty, would approve improvements to the "Jurassic Park" area for the use and benefit of the dealership.

We finally turn to the issue of damages. The trial court limited the judgment awarded to Milliken to $35,000. This amount was based on a finding that the bid was approved for $35,000. The evidence reveals, however, that the bid was not limited to $35,000. After reviewing the bid itself, we find that only the first part of the bid states the $35,000 amount. Part three of the bid, which is the part at issue here, is based on a per ton amount. We therefore affirm the limit of $35,000 as it pertains to part one of the bid, but modify the judgment as it pertains to part three. The judgment award should include $35,000 for completion of part one, plus the unit price per tonnage of stone as reflected in part three of the bid. We remand for recalculation of damages based upon parts one and part three.

### *Conclusion*

We hold that Mr. Busby had actual authority to enter into the contract with Milliken based upon the bid submitted by Milliken and approved by Mr Spina. We further hold that in endowing Mr. Busby with actual authority to contract with Milliken based upon a per unit price bid, and in failing to communicate any limitations to either Mr. Busby or Milliken, Mr. Spina cloaked Mr. Busby with the apparent authority to authorize Milliken to continue the work necessary to complete the project. Finally, we hold that the trial court erred in limiting the judgment award to part one of the bid. We therefore remand for a determination of damages consistent with this opinion.

Affirmed in part, modified in part, and remanded. Costs of this appeal are taxed to the appellee, Hays Nissan, Inc.

_____
DAVID R. FARMER, JUDGE