IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 21, 2006 Session

## VOLUNTEER CONCRETE WALLS, LLC., v. COMMUNITY TRUST & BANKING CO., AND CONSTRUCTION CONSULTANTS, INC.

**Direct Appeal from the Chancery Court for Hamilton County**
**No.  05-0368     Hon. Howell N. Peoples, Chancellor**

**No. E2006-00602-COA-R3-CV  - FILED DECEMBER 4, 2006**

In this breach of contract action, the Chancellor dismissed the Complaint and Counter-Complaint and Ordered plaintiff to remove the lien on the property where the construction of a wall was placed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Michael A. Wagner, Chattanooga, Tennessee, for appellant.

John T. Rice, Chattanooga, Tennessee, for appellees.

### OPINION

In this action, Community Trust and Banking Company ("CTBC") retained Construction Consultants, Inc. ("CC") as the general contractor for the construction of a bank facility in Ooltewah, Tennessee (the "CTBC Property"). CC asked Volunteer Concrete Walls, LLC ("VCW") to pour a concrete wall at the site.  In October 2004, VCW provided CC with a "Verbal Quotation Order" providing an initial estimate.  After various revisions, the last estimate recorded on the Verbal Quotation Order was $19,760.   Jim Simmons, CC's project superintendent, signed this Verbal Quotation Order on December 17.  On December 20, CC prepared a contract for VCW, but did not present it to VCW.  In January 2005, VCW spent four or five days constructing the wall,

and on January 21, VCW sent CC an invoice for $20,835. After VCW left the work site, Alan Bone, VCW's principal, called CC's offices to "mak[e] sure everyone was happy." During the conversation, Bone learned that CC required additional paper work, and a few days later, Bone received a contract in the mail from CC. Bone called CC's principal, Bruce Case, and refused to sign the contract. Bone also faxed a copy of the Verbal Quotation Order to CC on the same day, and on February 23, CC issued a check to VCW for $17,784.[1] On March 7, VCW filed a lien upon the CTBC Property in the amount of $21,352.

On April 4, VCW filed a Complaint against CC and CTBC, alleging that the Verbal Quotation Order signed by Jim Simmons constituted a binding contract and that CC had breached that contract. CC answered, denying the Verbal Quotation Order constituted a contract and that VCW failed to complete the work for which it was hired. The Answer included a Counter-Complaint alleging that VCW breached its contract by providing substandard and incomplete work.

The Chancery Court held a bench trial, and following trial the Court filed a Memorandum Opinion which found that there was no evidence that Jim Simmons was authorized to sign any contracts, and VCW was entitled to recover only under a quantum meruit theory. The Chancellor also found that there was no evidence of the value of the work that was done; the wall, as constructed by VCW, did not meet industry standards; and there was no evidence of what the parties actually intended to have done. Accordingly, the Court dismissed both the original Complaint and the Counter-Complaint, and the costs were taxed among the parties. Subsequently, the Chancery Court entered an Order requiring VCW to remove the lien with the cost of removal split equally between the plaintiff and defendants.

This appeal ensued, and in non-jury cases, we review the Trial Court's decision *de novo* upon the record of the proceedings below. *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 222 (Tenn. Ct. App. 2003). We presume the Chancellor's findings of fact are correct, unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d). This presumption of correctness, however, does not apply to the Court's conclusions of law. *Keaton,* 119 S.W.3d at 222.

At the close of VCW's proof, the defendants moved orally for "a directed verdict." The Trial Court neither granted nor denied the motion at that time. The defendants then presented their evidence, and on appeal, the defendants argue the Chancery Court erred in not granting the "directed verdict" at the close of VCW's proof.

"Motions for a directed verdict are neither necessary nor proper in a case which is being tried without a jury." *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977). The proper procedure in such cases is to move for an involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2). When a party improperly moves for a directed verdict during a bench trial, the courts should treat the motion as one for an involuntary dismissal. *See Scott v. Pulley*, 705 S.W.2d

---

[1]CC determined this amount by deducting a 10% retainage from the $19,760 estimate in the Verbal Quotation Order.

666, 672 (Tenn. Ct. App. 1985).

In this case, the defendants' presentation of proof constitutes a waiver of their right to appeal the Chancery Court's treatment of their motion. We have held that when a Tenn. R. Civ. P. 41.02(2) motion is denied, "the moving party may stand on its motion and bring an appeal or present its evidence; it cannot do both." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). When the moving party presents its own proof after challenging the legal sufficiency of its adversary's proof, the moving party waives any right to insist that the fact finder subsequently look exclusively at its adversary's evidence. *See Nashville Ry. & Light Co. v. Henderson*, 99 S.W. 700 (Tenn. 1907).[2]

VCW's Complaint alleged that CC signed the Verbal Quotation Order, which became an enforceable contract. The Chancery Court found that, although CC's superintendent signed the Verbal Quotation Order, there was no evidence that he had authority to do so; and the Order was not enforceable.

VCW argues the Verbal Quotation Order was an enforceable contract because Simmons had authority to sign on behalf of CC., and an agent's authority consists of both actual authority and apparent or ostensible authority. *Milliken Group, Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001). Actual authority "'consists of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess.'" *Id.* (quoting 2A C.J.S. *Agency* § 147 (1972)). At trial, CC's president, Bruce Case, testified that Jim Simmons was CC's superintendent on the job. He testified that, although Mr. Simmons had authority to sign orders for extra work, he did not have authority to sign contracts on behalf of CC. The evidence does not preponderate against the Trial Court's finding that Simmons did not have actual authority to sign the contract. The issue thus becomes whether Simmons had apparent authority to sign the Verbal Quotation Order on CC's behalf. Apparent authority exists when a principal's conduct clothes the agent with the appearance of authority. *S. Ry. Co. v. Pickle*, 197 S.W. 675, 677 (Tenn. 1917). The principal's conduct establishes apparent authority if "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *White v. Methodist Hosp. South*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992). The second element requires the third party (i.e., VCW) to show that it was actually aware of the facts which allegedly gave the agent apparent authority.

VCW argues that CC clothed Mr. Simmons with apparent authority by employing him as superintendent at the job site. Yet, VCW presented no witnesses who were present when Mr. Simmons signed the Verbal Quotation Order, and consequently provided no evidence of what facts were actually known by VCW's representatives. VCW's only witness was its owner, Alan Bone, but Mr. Bone admitted that he had no personal knowledge of the circumstances surrounding

---

[2]*Nashville Ry. & Light Co.*, indicates that this principle applied to motions for involuntary nonsuit. The modern involuntary dismissal is analogous to the involuntary nonsuit.

Simmons's signature. Bone then testified that Dewayne Roberts was present when Simmons signed the Verbal Quotation Order, but VCW did not call either Roberts or Simmons as witnesses. There is nothing in the Record to indicate that these individuals were not available to testify, and a party's failure to call a witness with particular knowledge of the facts, who would naturally favor that party's position, generally raises an inference that the testimony would have been unfavorable to the party who failed to call that witness. *Milliken Group, Inc.*, 86 S.W.3d at 569. The evidence does not preponderate against the Chancellor's finding that there was no evidence of Simmons's alleged authority to sign the Verbal Quotation Order on CC's behalf. Tenn. R. App. P. 13(d).

The Trial Court also addressed whether VCW was entitled to recover its claim for $3,051 in quantum meruit, and dismissed the claim because "[t]here [was] no evidence of the value of the work that was done." VCW disputes this finding and argues that the Verbal Quotation Order shows "what was being charged for everything." However, "[Q]uantum meruit recoveries are limited to the actual value of the goods or services, not their contract price." *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). VCW presented no evidence of the actual value of the services or the extent to which it made a profit or a loss on the work. Cases clearly hold that evidence of the contract price, alone, is not sufficient to support an action in quantum meruit. *Warren Bros. Co. v. Metro. Gov't of Nashville and Davidson County*, 540 S.W.2d 243, 247 (Tenn. Ct. App. 1976); *see also John J. Heirigs Const. Co. v. Exide*, 709 S.W.2d 604, 607 (Tenn. Ct. App. 1986); *Lange v. Wright*, No. M2001-02368-COA-R3-CV, 2002 WL 31467882, at *2 (Tenn. Ct. App. Nov. 6, 2002).

We pretermit plaintiff's remaining issues because of our holdings on the foregoing issues.

Finally, defendants argue that the Trial Court erred in dismissing their Counter-Claim. At trial, the defendants presented evidence that the Verbal Quotation Order was not an enforceable contract, but they did not present sufficient evidence of the parties' intentions to establish an alternate enforceable contract between the parties. They did not satisfy this element, and their breach of contract action was properly dismissed by the Chancellor.

Defendants also requested damages against VCW, pursuant to T.C.A. § 27-1-122, for filing a frivolous appeal. This statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977). A debatable factual or legal dispute will preclude an award of damages for frivolous appeal. *Anderson v. Dean Truck Line, Inc.,* 682 S.W.2d 900, 902 (Tenn. 1984); *Davis,* at 586. VCW presented debatable, factual and legal disputes. Accordingly, an award of damages for filing a frivolous appeal is not warranted in this case.

In conclusion, the defendants' complain about the Chancery Court's allocation of cost between the plaintiff and defendants for the removal of the lien on the property. However, defendants cited no authority in support of their position, and "Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed waived and will not be considered on appeal." *Branum v. Akins*, 978 S.W.2d 554, 558 (Tenn. Ct. App. 1998); *see also*

Tenn. R. App. P. 27(a)(7), (b).

We affirm the Chancery Court's dismissal of VCW's Complaint and defendants' Counter-Complaint, and tax the cost equally between the plaintiff and defendants.

_____
HERSCHEL PICKENS FRANKS, P.J.