IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2019 Session

## CLARA MANLEY ET AL. v. HUMBOLDT NURSING HOME, INC.

Appeal from the Circuit Court for Gibson County
No. H4030    Clayburn Peeples, Judge

_____

### No. W2019-00131-COA-R3-CV

_____

After a nursing home resident died, her daughter filed a wrongful death action against the facility. The nursing home moved to compel arbitration based on an arbitration agreement signed by the daughter when her mother was admitted to the facility. The daughter claimed that she lacked authority to sign the arbitration agreement for her mother. The trial court agreed and denied the motion to compel. On appeal, we conclude that the Federal Arbitration Act required the trial court to resolve the issue of whether an agreement to arbitrate had been formed. Because the nursing home failed to establish an agreement to arbitrate had been formed with the patient, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Craig C. Conley and Ormonde B. Landry, Memphis, Tennessee, for the appellant, Humboldt Nursing Home, Inc.

Les Jones and Ryan G. Saharovich, Memphis, Tennessee, for the appellee, Clara Manley.

## OPINION

### I.

Annie Cole was admitted to Humboldt Nursing Home and Rehabilitation Center for rehabilitation after a hospital stay. Her daughter, Clara Manley, signed a variety of documents during the admissions process, including a "Resident & Facility Arbitration Agreement." Ms. Manley signed the documents despite her mother being mentally

competent when she was admitted. Ms. Manley also did not possess a power of attorney to act on behalf of her mother.

According to Ms. Manley, when she and her mother arrived at Humboldt Nursing Home, her mother was immediately whisked away. Angela Bodkins, the facility's representative, asked Ms. Manley to complete the necessary paperwork. She acquiesced "[b]ecause I was asked to . . . and I wanted mother to get the care she needed." Ms. Manley could not recall anyone asking her if she had her mother's permission to act as her agent.

Ms. Manley conceded that she had signed healthcare documents for her mother in the past. But on all previous occasions, her mother had been present and an active participant in the decision-making process. As Ms. Manley explained, "My mother . . . would tell the staff to let me sign for her. She would tell me what to say, basically." Although her mother was not present, she "assumed that it was okay" to sign the documents because her mother knew she was being admitted and she had signed similar documents in the past. Still, she never discussed the documents with her mother or obtained her permission to sign them. And she knew her mother had never authorized her to sign documents when she was not present.

Ms. Cole's medical record from Humboldt Nursing Home did not reflect that she designated Ms. Manley to act as her agent. And Ms. Bodkins did not recall Ms. Cole ever saying or doing anything to indicate that anyone could sign documents for her. She also could not recall Ms. Manley ever saying that she had permission to sign the arbitration agreement for her mother. But Ms. Bodkins maintained that her standard practice when a new resident was admitted to the facility was to obtain permission from the resident for a family member to sign the admissions documents. She typically documented her conversation with the resident in the resident's medical record. Despite the lack of such documentation concerning Ms. Cole, Ms. Bodkins claimed that she must have obtained permission because she would never have allowed Ms. Manley to sign the documents otherwise.

After reviewing the deposition testimony of Ms. Manley and Ms. Bodkins, the trial court denied the motion to compel arbitration. The court ruled that Humboldt Nursing Home failed to prove the existence of a valid arbitration agreement.

## II.

We review the denial of a motion to compel arbitration "under the same standards that apply to bench trials." *See Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008). So our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Evidence preponderates

against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). Our review of the trial court's conclusions of law is de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

Humboldt Nursing Home presents two issues for our review. First, the facility argues that the enforceability of the arbitration agreement was an issue for the arbitrator to decide, not the trial court. Second, the facility contends that the facts in the record support a finding that Ms. Manley had actual or apparent authority to sign the arbitration agreement for her mother.

A.

Arbitration is a matter of contract. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Here, the arbitration agreement provided that it was to be "governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. § 1-16." Under the FAA, "parties are free to structure an arbitration agreement as they see fit." *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 357 (Tenn. Ct. App. 2001). They may choose to delegate "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" to an arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Courts must refrain from deciding disputes that have been expressly delegated to an arbitrator. *Id.* at 69.

Before ordering arbitration of a particular dispute, however, a court must be "satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *see also* 9 U.S.C. § 4 (2018) (permitting a court to order parties to arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue"). So courts must decide questions of "whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). When a party claims it never concluded an agreement at all, the court, not the arbitrator, determines whether the parties formed an agreement to arbitrate. *Granite Rock Co.*, 561 U.S. at 299-300; *see also Taylor v. Butler*, 142 S.W.3d 277, 283 (Tenn. 2004) (explaining that "whether a valid agreement to arbitrate exists between the parties is to be determined by the courts"). The federal presumption in favor of arbitration does not override the principle of consent. *Granite Rock Co.*, 561 U.S. at 302; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Consent is essential under the FAA . . . ."); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("FAA does not require parties to arbitrate when they have not agreed to do so.").

Thus, contrary to Humboldt Nursing Home's argument on appeal, the FAA required the trial court to resolve any dispute over the formation of the agreement to arbitrate. "[W]hether the signor lacked authority to commit the alleged principal" to

3

arbitration is a contract formation issue.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006); *Jones v. Allenbrooke Nursing & Rehab. Ctr. LLC*, No. W2019-00448-COA-R3-CV, 2019 WL 6842372, at *2 (Tenn. Ct. App. Dec. 16, 2019) (affirming that the extent of an agent's authority is a contract formation issue).  The trial court did not err in addressing this fundamental formation issue.[1]

B.

State law determines whether a valid arbitration agreement was formed.  *First Options of Chic., Inc.*, 514 U.S. at 944; *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 809 (Tenn. Ct. App. 2015).  The proponent of an arbitration agreement has the burden of establishing the agent's authority to bind the principal.  *See John J. Heirigs Const. Co. v. Exide*, 709 S.W.2d 604, 608 (Tenn. Ct. App. 1986) ("Agency must be proved by the party asserting it."); *Edwards v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2016-02553-COA-R3-CV, 2017 WL 4861658, at *5 (Tenn. Ct. App. Oct. 26, 2017); *Wilson v. Americare Sys., Inc.*, No. M2008-00419-COA-R3-CV, 2009 WL 890870, at *4 (Tenn. Ct. App. Mar. 31, 2009).  "When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency."  *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008).

1. Actual Authority

The record lacks evidence that Ms. Manley had express actual authority to sign the arbitration agreement for her mother.  Ms. Manley was never given written authority to make legal or healthcare decisions for her mother in a power of attorney or in a guardianship or conservatorship proceeding.  And Ms. Manley denied that her mother gave her oral permission to sign the admission documents.  *See Hall v. Haynes*, 319 S.W.3d 564, 573 (Tenn. 2010) ("A principal may expressly give actual authority to the agent in direct terms, either orally or in writing.").

Undaunted, Humboldt Nursing Home contends that the facts in this record demonstrate that Ms. Manley had implied actual authority to bind her mother.  Implied authority in this context denotes "actual authority either to do what is necessary to accomplish the agent's express responsibilities, or to act in a manner that the agent reasonably believes the principal wishes the agent to act, in light of the principal's objectives and manifestations."  *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *6 (Tenn. Ct. App. Oct. 20, 2008)

---

[1] The language of the "Resident & Facility Arbitration Agreement" does not compel a different result.  Although threshold arbitrability questions may be delegated to the arbitrator, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."  *Henry Schein, Inc.*, 139 S. Ct. at 530.

(quoting RESTATEMENT (THIRD) OF AGENCY § 2.01 cmt. b (AM. LAW INST. 2006)). It "differs from apparent authority in that it is authority which the principal intended that the agent should have." *Bells Banking Co. v. Jackson Ctr., Inc.*, 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996). Implied actual authority "can be circumstantially established through conduct or a course of dealing between the principal and agent." *Hall*, 319 S.W.3d at 573; *see also* RESTATEMENT (THIRD) OF AGENCY § 2.02 cmt. c (AM. LAW INST. 2006) (explaining that "it is often said that implied authority is actual authority proved circumstantially, which means it is proved on the basis of a principal's conduct other than written or spoken statements that explicitly authorize an action"). A finding of implied authority must be "predicated 'on some act or acquiescence of the principal' rather than the actions of the agent." *Hall*, 319 S.W.3d at 573 (Tenn. 2010) (citation omitted); *see also Milliken Grp., Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001) ("Actual authority flows from the manifestations of the principal to the agent.").

This record contains insufficient proof to establish implied actual authority. Humboldt Nursing Home relies heavily on Ms. Manley's assumption that it was okay to sign the admission documents and, by extension, the arbitration agreement. *See Necessary v. Life Care Ctrs. of Am., Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *5 (Tenn. Ct. App. Nov. 16, 2007) (holding that express authority to sign admission documents includes the authority to sign an optional arbitration agreement). But an agent's belief that she had authority is not sufficient to establish actual authority. *See Barclay v. Kindred Healthcare Operating, Inc.*, No. W2008-02828-COA-R3-CV, 2009 WL 2615821, at *4 (Tenn. Ct. App. Aug. 26, 2009); *John J. Heirigs Constr. Co.*, 709 S.W.2d at 608 ("Agency . . . may not be proved solely by the statements of the agent."). Ms. Manley never discussed the admission documents with her mother or sought her permission before signing them. And she knew she did not have actual authority to sign documents without her mother being present. Ms. Cole had previously granted her daughter permission to sign similar documents but only in her presence and with explicit instructions. Nothing about the mother and daughter's course of dealing indicates that Ms. Cole intended for her daughter to sign these documents on her own. *Cf. Farmer v. S. Parkway Assocs., L.P.*, No. W2012-02322-COA-R3-CV, 2013 WL 5424653, at *7 (Tenn. Ct. App. Sept. 25, 2013) (rejecting similar argument).

2. Apparent Authority

"Apparent authority" is the authority that "'the principal knowingly permits the agent to assume or which he holds the agent out as possessing . . . such authority as a reasonably prudent man, using diligence and discretion, in view of the party's conduct, would naturally suppose the agent to possess.'" *V. L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., Inc.*, 595 S.W.2d 474, 483 (Tenn. 1980) (quoting *Rich Printing Co. v. Estate of McKellar*, 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959)). Like actual authority, apparent authority must be shown "through the acts of the principal rather than those of the agent."

*Boren ex rel. Boren*, 251 S.W.3d at 433. "[A] principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority." *S. Ry. Co. v. Pickle*, 197 S.W. 675, 677 (Tenn. 1917).

Humboldt Nursing Home also failed to prove apparent agency. There is no evidence in this record of an "overt affirmation of agency" by Ms. Cole. *See Farmer*, 2013 WL 5424653, at *8. Ms. Bodkins did not recall Ms. Cole doing or saying anything to indicate that Ms. Manley had permission to sign documents on her behalf. *See Blackmon v. LP Pigeon Forge, LLC*, No. E2010-01359-COA-R3-CV, 2011 WL 9031313, at *17 (Tenn. Ct. App. Aug. 25, 2011) ("As to her admission to Facility, Mother took no actions to clothe Son with authority to act as her agent."); *Wilson*, 2009 WL 890870, at *5 ("There is no evidence she exhibited any sort of act to convey the authority to Ms. Wilson to sign the agreement in her behalf."); *Thornton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2007-00950-COA-R3-CV, 2008 WL 2687697, at *8 (Tenn. Ct. App. July 3, 2008) ("Nursing Home simply cites no single action by the Decedent where she indicated to Nursing Home or to Daughter that Daughter was her agent for the purpose in question." (emphasis omitted)). Humboldt Nursing Home asks this Court to assume that Ms. Cole gave her permission based solely on Ms. Bodkins's testimony about her standard practice. Although "an interesting thought experiment, . . . it is not evidence of agency." *Hendrix v. Life Care Ctrs. of Am., Inc.*, No. E2006-02288-COA-R3-CV, 2007 WL 4523876, at *6 (Tenn. Ct. App. Dec. 21, 2007).

## III.

The trial court properly considered whether Ms. Manley had authority to sign the arbitration agreement for her mother. And Humboldt Nursing Home failed to establish that Ms. Manley had actual or apparent authority to sign the arbitration agreement. So we affirm the trial court's decision and remand this case for further proceedings consistent with this opinion.

_____
W. NEAL MᴄBRAYER, JUDGE