# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 6, 2000 Session

## EDMOND BROTHERS SUPPLY COMPANY, INC.   v. BOYLE and ADAMS, ET AL.

**Appeal from the Chancery Court for Sullivan County**
**No. 15-196(M)      Hon. John S. McLellan, III, Chancellor**

### FILED NOVEMBER 6, 2000

### No. E1999-027310COA-R3-CV

---

Edmond Brothers Supply Company, Inc. ("Plaintiff"), a building materials supplier, sold materials to a contractor for use in a construction project for Bristol Regional Women's Center, P.C., ("Defendant").  Plaintiff did not send statements to Defendant because the contractor instructed Plaintiff not to bill Defendant.  When the project was completed, the contractor took the Plaintiff's final bill to Defendant for payment.  Defendant's office manager sent a check in full payment to Plaintiff, but Defendant stopped payment on the check and refused to pay the bill.  Plaintiff brought suit against Defendant, individual defendants, and a partnership to enforce a materialmen's lien for the outstanding debt.  All defendants denied enforceability of the lien.  The Trial Court dismissed the action to enforce the materialmen's lien, dismissed the action against the individual defendants and the partnership, and granted judgment to Plaintiff against Defendant on an agency theory.  The Trial Court found that the contractor had authority to make the purchases for Defendant and that since Defendant had used the materials in its building, Defendant was obligated to pay for them, despite its instruction to the contractor not to charge any materials for the project.  Defendant appeals this judgment.  We hold that the contractor had no actual, implied, apparent, or ostensible authority to charge building materials to Defendant.  We reverse the judgment of the Trial Court, and dismiss the Complaint against Defendant.

**Tenn. R. App. Rule 3; Judgment of the Trial Court Reversed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J. and CHARLES D. SUSANO, JR. J., joined.

Thomas C. Jessee, Johnson City, Tennessee, for the Appellant Boyle and Adams, et al.

David S. Bunn, Bristol, Tennessee, for the Appellee, Edmond Brothers Supply Company, Inc.

# OPINION

## Background

Edmond Brothers Supply Company, Inc., Plaintiff, is a building materials supplier in Bristol, Tennessee. Boyle and Adams is a medical partnership whose partners are Drs. Gary C. Boyle and Wesley F. Adams, Jr. The partnership operates Bristol Regional Women's Center, P.C. (Defendant). Ms. Leisa Boyle is the Office Manager of the Women's Center.

On Halloween night 1995, an arson fire caused major damage to the Women's Center, essentially gutting the second floor and causing substantial water damage to the first floor. Dr. Boyle contacted Mr. Thomas David Wine, a contractor who had worked for him on numerous other projects, and asked him to oversee reconstruction of the building. Dr. Boyle was anxious to accomplish the repair as quickly as possible. Mr. Wine contacted another builder, Mr. Craig Griffin, "because his specialty was insurance." Mr. Wine set up a meeting between Dr. Boyle, Dr. Boyle's attorney, Mr. Wine, and Mr. Griffin, at which time Mr. Griffin agreed to work on the project with Mr. Wine. The two building contractors were told to hire laborers, who would be paid weekly by Ms. Boyle according to time sheets provided by Mr. Wine or Mr. Griffin. They were also told that this was to be a "cash job," and that the Office Manager would supply them with cash weekly to purchase the needed materials. Dr. Boyle testified that he instructed all the contractors involved that they were not to purchase materials on credit.

During the first part of the project, Mr. Wine did demolition, and Ms. Boyle gave him cash to purchase any supplies he needed. Mr. Wine testified that, ". . . as it got a little more complicated, I let Craig Griffin go to Leisa and whatever it was we needed, she would write a check for the amount and give him a draw to pay for all the help." Both Mr. Wine and Ms. Boyle testified that neither Mr. Wine nor Mr. Griffin ever was authorized to charge any building supplies to the Women's Center or to the doctors individually. Ms. Boyle initially gave Mr. Griffin a check for $3,500 to purchase building supplies and testified that Mr. Griffin "only had authority to buy with the amount of money that he had on a weekly basis." Mr. Griffin testified that he would furnish the billings on weekly or biweekly basis and that he would be reimbursed if he had spent over what he had in the account or that they would advance the money to him for operating capital.

When Mr. Griffin first approached Plaintiff to purchase building supplies for the project, he gave Plaintiff the $3,500 Ms. Boyle had given him. Plaintiff set up an account in the name of Bristol Women's Center with a credit of $3,500 against which Griffin's purchases were to be made. At Mr. Griffin's instruction, the account was annotated by Plaintiff that no bills were to be sent to the Women's Center. During construction, Mr. Griffin purchased building materials from Plaintiff in the amount of $24,864.70. In addition to the first $3,500, Ms. Boyle later gave Mr. Griffin another $2,000 to pay for building supplies received from Plaintiff, which Mr. Griffin applied to the account. Mr. Griffin later returned material for a credit of $309.38. When Mr. Griffin's part of the project was complete, he gave Ms. Boyle the invoices and a final bill from Plaintiff in the amount of $19,055.32. Ms. Boyle complained to Mr. Griffin that the bill was too high, but

nevertheless, she wrote a check for $18,557.05 and mailed it to Plaintiff. After Ms. Boyle discussed the matter with Dr. Boyle that day, Dr. Boyle stopped payment on the check and refused to pay any of the amount due. Plaintiff, represented by former counsel, then filed this suit against the individual defendants, the partnership, and Bristol Regional Women's Center, P.C. to recover the balance owing on the outstanding account by enforcement of a materialmen's lien. Defendants answered asserting that Plaintiff's suit should be dismissed.

At trial, Mr. Marvin Ferrell, salesman for Plaintiff, testified that he set up the account in the name of Bristol Regional Women's Center and credited $3,500 to the account at Mr. Griffin's instruction. He never received authorization from any physician or any employee of the Women's Center to establish an account for the Women's Center. Although it was Plaintiff's routine business practice to obtain such authorization from a property owner, Plaintiff did not do so here. None of the defendants ever told him that Mr. Griffin was authorized to charge anything to an account in the Women's Center's name. He also stated that the Women's Center was never sent monthly statements, although it was Plaintiff's usual procedure to send such bills. Mr. Ferrell's first contact with Ms. Boyle was after the project was finished and Plaintiff's bill remained unpaid.

Dr. Gary Boyle, the self-described supervisor of the rebuilding project, testified at trial about the purchasing of building materials:

> Q:    At any time did you authorize anyone on the job site
>       to open a charge account at any supplier?
>
> A:    Not only would the answer to that be no, the answer
>       would be that I specifically instructed everyone that I
>       hired that they were to charge nothing. Again, they
>       not only were not told to, there were specifically told
>       not to.
>
> Q:    And how often were they to turn in  - - they being
>       Wine and Stanley and Griffin - - how often were they
>       to turn in their receipts, their hours? How were they
>       going to get paid?
>
> A:    Weekly, and again, they were going to get cashed out.
>       In other words, it was going to be a cash paid job.

On May 14, 1997, the Trial Court filed its Memo Opinion, in which the Trial Court found that Mr. Griffin was hired by Dr. Boyle to purchase materials and was the agent of the Women's Center as to the purchase of those materials. The Trial Court found, among other things, that Mr. Griffin had authority to purchase materials from Plaintiff and that the Women's Center stopped payment on its check in full payment for those materials after a phone call from the Women's Center's attorney to Plaintiff's Vice-President. The Trial Court further found that the

Women's Center had knowledge of Mr. Griffin's making purchases from Plaintiff and "took no action to place Plaintiff on notice of Defendants' 'no credit purchases' arrangement allegedly made with Mr. Griffin. The Trial Court opined that the primary dispute appeared to be the method of purchasing materials by credit rather than with cash. The Trial Court found that Plaintiff had failed to prove delivery to the Women's Center of certain materials, and declined to award Plaintiff judgment for those invoices. The Trial Court dismissed the action against the Boyle and Adams partnership, Gary Boyle, Leisa Boyle, Deborah Adams and Wesley Adams individually, and dismissed the action to enforce the materialmen's lien. The Trial Court granted judgment to the Plaintiff against Defendant Bristol Regional Women's Center, P.C. in the sum of $17,426.95, plus prejudgment interest and statutory post-judgment interest, discretionary costs, mediation expense, and trial court reporter expenses. Only the judgment against Bristol Regional Women's Center, P.C. is on appeal.

## **Discussion**

Defendant appeals and raises the following issues:

1. The Trial Court erred in finding that Craig Griffin was an agent of The Bristol Regional Women's Center and had authority to purchase materials on credit from the plaintiff for the benefit of the defendant.

2. The Trial Court erred in finding that the plaintiff met its burden of proof concerning the sale to, delivery to, and use of building materials by the defendant and the amount owed by the defendant based on said sales.

3. The Trial Court erred in awarding prejudgment interest on the amount awarded to the plaintiff.

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998).

Defendant first raises the issue of whether the Trial Court erred in finding that Craig Griffin was an agent of The Bristol Regional Women's Center with authority to purchase materials on credit from Plaintiff for the benefit of Defendant. The finding of the Trial Court was that Mr. Griffin's authority to purchase materials from Plaintiff for Defendant obligated Defendant to pay Plaintiff for those materials, despite the fact that Mr. Griffin was specifically instructed not to charge any materials to the Defendant.

-4-

As stated in 3 C.J.S. *Agency* § 410 (1973), "[a] principal is bound neither by contracts made by a person not his agent, nor by those of his agent beyond the scope of his actual and apparent authority, which he has not ratified and is not estopped to deny." *Bells Banking Co. v. Jackson Centre, Inc.,* 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996). Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume or which the principal holds the agent out as possessing. *Rich Printing Co. v. McKellar's Estate,* 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959). Apparent authority of an agent must be determined by the acts of the principal and not those of the agent. *Durham v. Wadell & Reed, Inc.,* 723 S.W.2d 129, 130 (Tenn. Ct. App. 1986). Ostensible authority is such authority as a principal intentionally or by lack of ordinary care causes or allows a third person to believe the agent possesses. It is essential to ostensible authority that the principal hold the agent out to the public as possessing sufficient authority to embrace the particular act in question when the agent does not actually have such authority, or allows the agent to exercise such authority even though not actually granted, and the person dealing with the agent, acting in good faith, believed or had reason to believe the agent had the necessary authority. When an agent acts within the scope of his apparent or ostensible authority, the principal cannot prevail against a third party unless it shows that the third party knew or had reason to believe the agent did not have the claimed authority. *Intersparex Leddin KG v. Al-Hadda,* 852 S.W.2d 246, 247 (Tenn. Ct. App. 1992).

In this case, there is no proof in the record that Defendant gave Mr. Griffin actual authority to establish an account in the name of the Women's Center, charge building materials to the Women's Center, and withhold sending monthly statements to Defendant. In fact, the preponderance of the evidence is to the contrary. Nor did Defendant ever hold Mr. Griffin out as having authority to establish such a credit account and make charges. The testimony at trial shows that none of Plaintiff's employees ever communicated with Defendant until the project was finished. Plaintiff could onerate Defendant for the debt if it could show that Defendant "by lack of ordinary care" caused or allowed Plaintiff to believe that Mr. Griffin had the authority to charge purchases. The preponderance of the evidence is otherwise. Plaintiff's employees testified that its normal procedures would have prevented this scenario, and that it exercised poor business judgment in failing to follow its normal procedures.

It is uncontested that Mr. Griffin was authorized to purchase construction materials for Defendant's project and that Defendant's Office Manager on occasion reimbursed him for the purchase of such construction materials upon his presentation of receipts. None of the contractors who testified at trial indicated that they were authorized to establish any accounts in the name of Defendant or to purchase any building materials on credit. Defendant's Office Manager routinely gave "working money" to the contractors, which they used to buy materials with cash, and on occasion she reimbursed them for purchases they had made with their own resources when they brought in receipts. At trial, the Office Manager testified that Mr. Griffin "only had authority to buy with the amount of money that he had on a weekly basis . . . he would come back and get some more." Dr. Boyle testified that Mr. Griffin was instructed not to purchase any materials on credit and "to charge nothing" as this was to be a "cash job."

Suppliers who are creditors in building projects normally have recourse under the Tennessee Materialmen's Liens statutes, Tenn. Code. Ann. § 66-11-101, *et seq*., when a contractor such as Mr. Griffin purchases building materials on credit and the supplier is never paid. If the supplier complies with the requirements of the Materialmen's Liens statutes, the supplier can perfect its lien. If the supplier does not comply with the requirements of the statutes, its lien is lost.

Here, Plaintiff filed suit to enforce a materialmen's lien. The Trial Court found Plaintiff had not satisfied the requirements of the Materialmen's Liens statutes and dismissed the action to enforce the lien. Nevertheless, the Trial Court found that whether the building materials were purchased with cash or on credit was not relevant to the issue of agency. We disagree. To so hold would establish a precedent contrary to the purpose and procedures of the Materialmen's Liens statutes. The Materialmen's Liens statutes provide certain protections for both a supplier and a property owner. If the supplier fails to comply with the requirements of the Materialmen's Liens statutes, the supplier has no materialmen's lien against the owner's property. To circumvent that statute by permitting recovery against the "principal" under an agency theory upon showing only that the contractor had authority to purchase materials, although not on credit, would effectively amend the statute by judicial decree. Plaintiff's position, if adopted, would result in property owners being liable to suppliers for materials purchased by a contractor even if that contractor was specifically instructed not to purchase the materials on credit, the owner had paid the contractor for those materials, and the contractor had not satisfied the requirements of the Materialmen's Liens statutes. Such a holding would give far more protection to a supplier, and correspondingly less protection to a property owner, than that provided for by Tennessee Materialmen's Liens statutes and established agency law.

From the record before us, the evidence preponderates in favor of a finding that Mr. Griffin's purchasing the materials from Plaintiff on credit was beyond the scope of his actual, apparent, implied, or ostensible authority as Defendant's agent. Plaintiff's only recourse for payment of Mr. Griffin's charges lies in an action against Mr. Griffin. Our holding on this issue makes it unnecessary to address the remaining issues raised by Defendant, which are pretermitted as moot.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellee, Edmond Brothers Supply Company, Inc.

_____
D. MICHAEL SWINEY, JUDGE