IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 3, 2003 Session

# TANIKIA YOLANDA BOONE v. HOUSTON GIBSON, JR.

**Appeal from the Circuit Court for Hamilton County**
**No. 00C1170      Jacqueline Schulten, Judge**

**FILED FEBRUARY 27, 2004**

**No. E2003-00226-COA-R3-CV**

Tanikia Yolanda Boone ("the tenant") sued Houston Gibson, Jr. ("the landlord"), seeking damages and other relief for wrongful eviction and for the wrongful withholding of her personal possessions, pursuant to the Uniform Residential Landlord and Tenant Act ("the URLTA"), Tenn. Code Ann. § 66-28-101, *et seq.* (1993 & Supp. 2003). The tenant attempted service on the landlord by having the landlord's process served on Donna Gibson, the landlord's former wife. After the landlord failed to respond to the complaint, the tenant filed a motion for default judgment. The trial court granted the motion and awarded the tenant damages of $20,000 and attorney's fees and costs totaling $3,500. Approximately two years later, in response to the tenant's efforts to execute on her judgment, the landlord filed a motion to dismiss the default judgment on the ground that the trial court lacked personal jurisdiction over him. Following a hearing on the landlord's motion, the trial court held that the landlord's former wife had authority as his agent to accept service of process on his behalf. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

John M. Higgason, Jr., Chattanooga, Tennessee, for the appellant, Houston Gibson, Jr.

Bruce C. Bailey, Chattanooga, Tennessee, for the appellee, Tanikia Yolanda Boone.

**OPINION**

## I. *Background*

The landlord posted a "for rent" sign at his apartment building. This was his usual practice in advertising his vacant apartments. He listed his former wife's telephone number on the sign. The tenant saw the sign and called the listed telephone number. The landlord's former wife answered the telephone. She arranged for the tenant to see the apartment. The tenant claimed (1) that she gave the landlord's former wife a $200 cash deposit; (2) that the former wife signed the landlord's name at the bottom of the lease; and (3) that the former wife gave her a receipt for the deposit.

About a week after moving in, the tenant was involved in a domestic dispute with her boyfriend early one Saturday morning. Both were arrested. The next day, another tenant called the landlord and told him that there had been a disturbance involving the tenant and that two adults had been escorted to jail. The landlord, along with a friend and the friend's son, went to investigate and discovered clothing and other items "scattered" across the backyard. According to the landlord, he believed a trespasser had entered the apartment. As a result, the landlord packed up the tenant's personal property and moved her possessions to a storage facility.

It was the landlord's general practice to leave vacant apartments unlocked so potential tenants could enter them to determine if they were interested in renting. On occasion, he would leave blank rental agreements in the vacant apartments.

When the tenant was released from police custody, she returned to her apartment, only to find that a new lock had been put on her apartment door and that all of her possessions were missing. The tenant called the landlord's former wife, who gave her the landlord's telephone number. When she called the landlord, the tenant discovered that he had placed all of her personal property in storage. According to the tenant, the landlord told her that "he wasn't going to have that type of problem in his apartment." The tenant testified that the landlord refused to return her personal possessions until she paid $211 in storage fees and other expenses. In response, the tenant told the landlord that she did not have anywhere to go, did not have any clothes, and did not have her identification. Although the landlord claimed that the tenant was a trespasser, he eventually arranged for her to stay in a hotel that night.

## II. *Procedural History*

The tenant filed a complaint in the instant action and supported it with her affidavit. The tenant sought, among other things, the return of her personal possessions and, pursuant to the URLTA, Tenn. Code Ann. § 66-28-504 (1993), a refund of her security deposit and damages. In her complaint, she alleged that, under Tenn. Code Ann. § 66-28-504, the landlord's actions amounted to an unlawful ouster or ejectment. Furthermore, the tenant averred that the landlord wrongfully withheld her possessions from her and that she was entitled to those possessions pursuant to Tenn. Code Ann. § 29-30-101, *et seq.* (2000).

After the landlord failed to respond to the complaint or otherwise make an appearance, the trial court entered an order granting the tenant's motion for a default judgment. The trial court found

that "the [landlord] acted unlawfully and in violation of the [URLTA] as described in the [tenant's] [c]omplaint, and that the [tenant] has suffered injuries and damages as set forth in her [c]omplaint . . . ." Pursuant to Tenn. Code Ann. § 66-28-504, the trial court then awarded the tenant $17,000 in compensatory damages; $3,000 in punitive damages; and $3,500 in attorney's fees and costs.

Over two years after the default judgment was entered, the landlord filed a motion to dismiss and a motion for a temporary restraining order to prevent the tenant from collecting the judgment. The landlord asserted that the tenant had failed to secure service of process on him, noting that he was never personally served. The trial court granted the landlord's motion for a temporary restraining order, but deferred a ruling on the landlord's motion[1] to a hearing.

III. *The Testimony*

A.

At the hearing, the landlord testified that he worked as a driver for Chattanooga Trailer Express and also owned rental property. He testified that he was often out-of-town driving a truck and that, as a result, his children often took messages from potential renters for him. Because the children lived with their mother, the landlord would list his former wife's home telephone number on "for rent" signs posted at his apartments. When the landlord was home, he testified that he would cover his former wife's telephone number on the "for rent" signs.

The tenant testified that she saw the "for rent" sign and called the telephone number listed on it. The landlord's former wife answered the telephone and agreed to meet the tenant to show her the apartment. According to the landlord's former wife, she agreed to show the apartment to the tenant as a favor to her former husband since he and the children were out-of-town on vacation. She also confirmed that she met the tenant at the apartment on two occasions and attempted to meet her on two other occasions.

The tenant testified that she gave the former Mrs. Gibson a $200 deposit for the apartment; signed a lease; and received a receipt from her. The tenant also testified that the landlord's former wife signed the landlord's name to the lease. The former Mrs. Gibson controverted this testimony, by denying she received a deposit from the tenant, signed the lease, or gave the tenant keys. The landlord testified that he did not know anything about the dealings between the tenant and his former wife. He denied that he agreed to lease the apartment to the tenant.

The landlord testified that after the domestic disturbance, he carefully packed the tenant's possessions and placed everything in storage. However, the tenant testified that her personal possessions were in fact thrown all over the storage unit. The tenant testified that many of her

---

[1]The trial court appears to have treated the landlord's "motion to dismiss" as a Tenn. R. Civ. P. 60.02(3) motion.

-3-

personal possessions were missing or damaged. Among the missing items were her new computer, her copy of the lease,[2] and the receipt for the deposit.

### B.

The former Mrs. Gibson testified that she was served with process while at work at First Tennessee Bank. According to her, a man handed her an envelope while she was sitting at her desk in the middle of the bank lobby. The envelope was addressed to "Houston Gibson, care of Donna Gibson, agent." After the process server handed her the envelope, she told him that she was not the landlord's agent. The process server persisted and this made the landlord's former wife angry. She testified that she called the sheriff's department and then threw the envelope away. She also testified that she attempted to contact the landlord regarding the papers, but was unable to reach him. Both the landlord and his former wife testified that they rarely saw or talked to each other.

The landlord testified that he was never served with any type of papers with respect to the tenant's lawsuit. Furthermore, the landlord claimed that he did not learn of the default judgment against him until he received a message from his property manager "about a garnishment or something going on with the renters." The landlord also testified that his former wife was never authorized to rent apartments on his behalf or to act as his agent in any way.

### IV. *Trial Court's Judgment*

Following the hearing, the trial court found that an agency relationship existed between the landlord and his former wife. From the bench, the trial court made the following findings:

> The Court has before it a motion to dismiss. I've reviewed the pleadings and the affidavits. I've heard the testimony of the witnesses, been able to judge the credibility of those witnesses, and based upon all that the Court makes the following findings and conclusions:
>
> The only thing really before this Court is whether or not the former Mrs. Gibson had the authority as an agent to accept service of process on behalf of [the landlord], and you really need to go no further than that. [The former] Mrs. Gibson, not once, but up to four times attempted to show this apartment on behalf of [the landlord]. What more do you need? It wasn't on happenstance. It wasn't by accident. It wasn't she was there cleaning. It wasn't any of those things. It was a purposeful thing for her to show this apartment to this tenant to be [sic] and thereafter lies the root.

---

[2] The rental agreement is not in the record.

So the Court finds that there was, in fact, agency on the part of the ex-Mrs. Gibson to accept service of process for Mr. Gibson. Not only was her phone number on the sign at one point, admitted by all the parties. Whether it was taped over this particular week or not, reasonable inference could be that somebody saw that number another day when it wasn't taped over.

Whether or not there were keys, whether or not there was a deposit made, whether or not there was a lease is really subsequent to the event of whether or not there was service of -- if there was agency that would allow service of process. So that's what the Court is looking at.

I will, however, state that I find it extremely sloppy business practice to have doors open, keys in a drawer, a lease agreement on the counter, lights on somehow, and all of those things free to whoever wanted to take it. So that's one of the reasons the Court has to look at the credibility of the witnesses.

Judgment in the amounts previously stated was thereafter entered by the trial court.

## V. *Standard of Review*

In this non-jury case, our standard of review is *de novo* upon the record of the proceedings below; however, the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). Our review of questions of law is *de novo* with no such presumption of correctness attaching to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

In applying our standard of review, we are mindful of the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 567 (Tenn. Ct. App.1991).

## VI. *Issues*

The tenant raises two issue for our review, which issues we copy from her brief:

> 1. Did the Trial Court err in finding that the Court had *in personam* jurisdiction of the [landlord]?
>
> 2. Did the Trial Court err in finding that [landlord's] ex-wife was his agent for purpose of service of process?

-5-

The landlord argues that the trial court did not have personal jurisdiction over him because he was not personally served. The landlord further argues that "personal service upon his [former wife] did not convey [sic] personal jurisdiction upon him . . . [because] [s]he was not his agent to accept service of process by either apparent or implied authority or for any other purpose."

## VII. *Discussion*

### A.

The URLTA, in Tenn. Code Ann. § 66-28-302 (1993), addresses the issue of how, by failing to do certain things, an individual/entity other than a landlord can become the agent for a landlord "for the purpose of service of process." Thus, our initial focus is on that particular statutory provision:

> (a) The landlord or any person authorized to enter into a rental agreement on the landlord's behalf shall disclose to the tenant in writing at or before the commencement of the tenancy the name and address of:
>
> (1) The agent authorized to manage the premises; and
>
> (2) An owner of the premises or a person or agent authorized to act for and on behalf of the owner for the acceptance of service of process and for receipt of notices and demands.
>
>           \*    \*    \*
>
> (c) A person who fails to comply with subsection (a) becomes an agent of each person who is a landlord for the purpose of service of process and receiving and receipting for notices and demands.

*Id*. The statute does not define, in a comprehensive manner, the concept of "any person authorized to enter into a rental agreement" except to define a "rental agreement." *See* Tenn. Code Ann. § 66-28-104(10) (Supp. 2003).[3] In the instant case, it is clear that we are dealing with a "rental agreement" as defined in the URLTA. We now turn to the common law to determine whether the landlord's former wife qualifies as a "person authorized to enter into a rental agreement." If she does, and if she failed to comply with the mandates of Tenn. Code Ann. § 66-28-302(a)(1)&(2), she became the landlord's agent for service of process with respect to the tenant's complaint.

---

[3]Tenn. Code Ann. § 66-28-104(10) provides as follows:

> "Rental agreement" means all agreements, written or oral, and valid rules and regulations adopted under § 66-28-402 embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises.

B.

"Apparent authority of an agent must be determined by the acts of the principal and not those of the agent." ***Edmond Bros. Supply Co. v. Boyle and Adams***, 44 S.W.3d 530, 534 (Tenn. Ct. App. 2000) (citing ***Durham v. Waddell & Reed, Inc.***, 723 S.W.2d 129, 130 (Tenn. Ct. App. 1986)). "[Apparent] authority is such authority as a principal intentionally or by lack of ordinary care causes or allows a third person to believe the agent possesses." ***Edmond Bros.***, 44 S.W.3d at 534. In order for a person to have apparent authority, the principal must (1) "hold the agent out to the public as possessing sufficient authority to embrace the particular act in question when the agent does not actually have such authority," or the principal must (2) allow "the agent to exercise such authority even though not actually granted, and the person dealing with the agent, acting in good faith," must believe or have "reason to believe the agent had the necessary authority." ***Id.*** "When an agent acts within the scope of his apparent or ostensible authority, the principal cannot prevail against a third party unless it shows that the third party knew or had reason to believe the agent did not have the claimed authority." ***Id.***

C.

In the case before us, we hold that the former Mrs. Gibson had apparent authority "to enter into a rental agreement on the landlord's behalf." ***Id***. The landlord, by "lack of ordinary care," *see id*., allowed the tenant to believe that his former wife had authority to act for him with respect to the execution of his rental agreements. He listed her home telephone number on the "for rent" sign posted at his apartment building. By listing his former wife's telephone number on the "for rent" sign, the landlord held her out to the public as one possessing the authority to act on his behalf with respect to the subject matter of the "for rent" sign, *i.e.*, the renting of his apartments. It is clear that the acts of the landlord caused the tenant to reasonably believe that the former Mrs. Gibson had authority to act on his behalf with respect to his apartments. The former wife did nothing to dispel her apparent authority; on the contrary, she acted in furtherance of it.

It seems obvious to us that the trial court accorded more credibility to the tenant's testimony than to that of the landlord and his former wife. Therefore, we conclude, in summary, the evidence does not preponderate against the following findings: (1) that the landlord held his former wife out as his agent for the purpose of renting apartments; (2) that the tenant reasonably believed she was his agent; and (3) that the former Mrs. Gibson signed the rental agreement by affixing the landlord's name to it.

D.

Because the former wife had apparent authority with respect to the leasing of the landlord's apartments, the evidence preponderates that she was a "person authorized to enter into a rental agreement on the landlord's behalf" pursuant to Tenn. Code Ann. § 66-28-302(a) of the URLTA. As a result, the former Mrs. Gibson was responsible for informing the tenant before the tenancy began as to the name and address of the "agent authorized to manage the" apartment building, *see* Tenn. Code Ann. § 66-28-302(a)(1), and the name and address of the "owner of the premises or a person or agent authorized to act for and on behalf of the owner for the acceptance of service of

process," *see* Tenn. Code Ann. § 66-28-302(a)(2). The former Mrs. Gibson failed to fully comply with Tenn. Code Ann. § 66-28-302(a), in that she only disclosed the name of the owner of the apartment complex. As a consequence of this failure, she became the landlord's agent "for the purpose of service of process." *See* Tenn. Code Ann. § 66-28-302(c). We find that the evidence does not preponderate against the trial court's finding that the former Mrs. Gibson was the landlord's agent for service of process. It follows that service of process on the former Mrs. Gibson was "good" service as to the landlord and vested the trial court with *in personam* jurisdiction over him. The trial court did not err in denying the landlord's motion to dismiss.

## VIII. *Conclusion*

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Houston Gibson, Jr. This case is remanded for enforcement of the trial court's underlying judgment in favor of the tenant and for collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE