IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2007 Session

# BELLSOUTH ADVERTISING AND PUBLISHING CORPORATION
# v. PRIMARY RESIDENTIAL MORTGAGE, INC.

**Appeal from the Chancery Court for Williamson County**
**No. 31150     Robbie T. Beal, Judge**

---

**No. M2007-00200-COA-R3-CV - Filed March 7, 20008**

---

The trial court held that a mortgage company's branch manager had apparent authority to bind the company to local advertising contracts although there was a limitation on the branch manager's authority which prohibited execution of contracts without the company's approval. Since the mortgage company established the branch manager as a general agent, it was incumbent on the company to notify third parties of any limitations on the agent's authority. Since it did not do so, the third party had a good faith belief in the agent's apparent authority, and the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which E. RILEY ANDERSON, SP.J., joined. WILLIAM B. CAIN, P.J., M.S., not participating.

Kevin C. Baltz, Nashville, Tennessee, for the appellant, Primary Residential Mortgage, Inc.

Mark B. Reagan, Phillip D. Patterson, Nashville, Tennessee, for the appellee, BellSouth Advertising and Publishing Corporation.

## OPINION

This case concerns whether Primary Residential Mortgage, Inc. ("PRMI") is liable under contracts executed by one of its branch managers with BellSouth Advertising & Publishing Corporation ("BellSouth") for Yellow Page Directory and internet advertising. After PRMI refused to honor the contracts, BellSouth sued PRMI for $34,120.06 representing the balance due for the advertising contracts, plus costs and attorney's fees as allowed in the contracts. BellSouth did not name the branch manager as a party.

The parties filed cross motions for summary judgment. On July 26, 2006, the trial court granted BellSouth's motion for summary judgment as to liability finding that the branch manager had "apparent and/or ostensible authority" to bind PRMI to the BellSouth advertising contracts and

that PRMI is in breach of the contracts as alleged by BellSouth. Subsequently, after a hearing on the issue of damages on December 28, 2006, the trial court awarded BellSouth $34,090.06 for breach of contract, prejudgment interest at 7% totaling $7,623.10, and attorney's fees under the contracts for $3,000 totaling a judgment of $44,713.16.

PRMI appealed the trial court's order solely on the ground that the trial court erred in finding that its branch manager had authority to bind PRMI to contracts with BellSouth.

## I. STANDARD OF REVIEW

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764; *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples*, 15 S.W.3d at 88.

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "[I]f there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

To meet the requirements for summary judgment, a defendant moving for summary judgment must, in its filings supporting the motion, either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *Blair,* 130 S.W.3d at 767; *Staples*, 15 S.W.3d at 88. If the moving party fails to meet this burden, the burden to come forward

with probative evidence establishing the existence of a genuine issue for trial does not shift to the non-moving party, and the motion must be denied. *Staples*, 15 S.W.3d at 88-89.

If, however, the moving party successfully negates a claimed basis for the action or establishes an affirmative defense, the non-moving party may not simply rest upon the pleadings. *Staples*, 15 S.W.3d at 89. In that situation, the non-moving party has the burden of pointing out, rehabilitating, or providing new evidence to create a factual dispute as to the material element in dispute. *Staples*, 15 S.W.3d at 89; *Rains v. Bend of the River*, 124 S.W.3d 580, 587-88 (Tenn. Ct. App. 2003).

## II. FACTS

Since this matter was presented to the court on cross-motions for summary judgment, each party believes the undisputed facts entitles it to judgment. Given the simple nature of the directory and internet advertising contract, the basic facts are straightforward.

Craig Daliesso was the branch manager for PRMI at its Franklin, Tennessee location when he signed a series of contracts with BellSouth to advertise PRMI in the Franklin area. The advertising at issue was in the 2002 Nashville, Tennessee Yellow Pages and internet directory advertising in Franklin for 2002 and 2003. The Branch Manager Agreement between Mr. Daliesso and PRMI provided that Mr. Daliesso could enter into contracts binding PRMI only with PRMI's written consent.

> Manager shall have no authority whatsoever to enter into any contract or agreement, whether in oral or written form, on behalf of the Employer, or to otherwise obligate the Employer in any manner, without the prior written consent of Employer. Neither shall Manager ever represent or hold himself or herself out as having any such authority without such prior written consent of Employer.

For purposes of summary judgment, it is not disputed that Mr. Daliesso failed to get PRMI's consent to the BellSouth Contracts.[1] BellSouth was not aware of the Branch Manager Agreement or of its restrictions about contracts.

During negotiations for the contracts, Mr. Daliesso met with Peggy Handy, BellSouth's sales representative. Ms. Handy asked Mr. Daliesso whether PRMI was a franchise and whether he had authority to bind PRMI. Mr. Daliesso told Ms. Handy that he had authority to bind PRMI.

Based upon the foregoing, the trial court concluded that Mr. Daliesso had "apparent and/or ostensible authority" to bind PRMI and consequently PRMI's failure to pay for the advertising constituted breach of contract.

---

[1] The Branch Manager Agreement also provides that Mr. Daliesso will use only marketing tools approved or provided by PRMI.

## III. ANALYSIS

Clearly, an agent may exercise the authority actually granted by the principal. *Milliken Group, Inc. v. Hays Nissan*, 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001). A principal may also be bound when it has not granted the agent authority but the principal's behavior leads third parties to believe the agent is vested with authority. *Id*. at 570, (citing 3 Am.Jur.2d Agency § 78 (1986)). This type of agency is called "apparent agency."

The basic framework of "apparent agency" is well known and logically follows its title - *i.e.*, the authority the agent appears to have. It is clear that apparent agency must be established by the acts of the principal and not by the acts of the agent. *Milliken Group*, 86 S.W.3d at 569; *Edmond Brothers Supply Company, Inc. v. Boyle*, 44 S.W.3d 530, 535 (Tenn. Ct. App. 2000); *Bells Banking Co. v. Jackson Centre, Inc.*, 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996). Put another way, a principal is responsible for the acts of the agent "where the principal himself by his acts or conduct has clothed the agent with the appearance of authority." *Mechanics Laundry Serv. v. Auto Glass Co. of Memphis*, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002) (quoting *Southern R. Co. v. Pickle*, 197 S.W. 675, 676 (Tenn. 1917)). Consequently, apparent agency is agency by estoppel since having placed its agent in the position of appearing to have authority, the principal is estopped to deny it. *Kelly v. Cliff Pettit Motors*, 234 S.W.2d 822, 823-24 (Tenn. 1950); *White v. Methodist Hospital*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992).

In order to prove that an agent has apparent authority to bind its principal, the following three elements must be proved: (1) the principal either actually or negligently acquiesced in the agent's exercise of authority; (2) the third party had knowledge of the fact and a good faith belief that the agent possessed such authority; and (3) the third party detrimentally relied on the apparent authority. *Mechanics Laundry Serv.*, 98 S.W.3d at 157; *Milliken Group*, 86 S.W.3d at 569-70.

The descriptive phrases "apparent authority" and "ostensible authority" are used to describe the same type of authority. The court in *Edmond Brothers Supply Company, Inc. v. Boyle* used the phrases interchangeably and described "ostensible authority" thusly:

> Ostensible authority is such authority as a principal intentionally or by lack of ordinary care causes or allows a third person to believe the agent possesses. It is essential to ostensible authority that the principal hold the agent out to the public as possessing sufficient authority to embrace the particular act in question when the agent does not actually have such authority, or allows the agent to exercise such authority even though not actually granted, and the person dealing with the agent, acting in good faith, believed or had reason to believe the agent had the necessary authority. When an agent acts within the scope of his apparent or ostensible authority, the principal cannot prevail against a third party unless it shows that the third party knew or had reason to believe the agent did not have the claimed authority.

44 S.W.3d at 534.

-4-

In our case, it is clear that the first and last elements are met.[2] As to the first element, PRMI created an environment giving Mr. Daliesso apparent authority. PRMI established Mr. Daliesso in a position of authority as its manager. By this public act and under the terms of the Branch Manager Agreement discussed later, PRMI created the appearance that Mr. Daliesso had authority from PRMI to manage the branch office.

With regard to the third element, it is clear that BellSouth detrimentally relied on Mr. Daliesso's apparent authority when it signed a contract in reliance on the branch manager's authority.

The question in this case is whether the second requirement of apparent authority is met, *i.e.*, whether BellSouth had a good faith belief in Mr. Daliesso's authority to execute these particular contracts.[3] In other words, did these facts give BellSouth a good faith belief in Mr. Daliesso's agency or did BellSouth have a duty to investigate further before relying to its detriment on Mr. Daliesso's apparent authority? We believe several factors support BellSouth's good faith belief.

We find the Supreme Court's rationale in *O'Shea v. First Federal Savings and Loan Association*, 405 S.W.2d 180 (Tenn. 1966) to be particularly helpful. Therein, the Court stated:

> The most preeminent authority on the law of agency known to us is Mechem on Agency (2d Ed.). Through the years, we have uniformly found the summations in this work of the case law of the various states to be lucid and discriminating. At Sec. 737 of this authority appears the following:
>
> > 'General and Special Agents:
> >
> > If by express appointment, or by long acquiescence, recognition or course of dealing, one man has conferred upon another the character of one possessing the requisite authority to represent him in a general way during some more or less continuous period in the transaction of all of his business of a certain kind, or at a particular place, or to perform all acts of a certain kind or class, he must be held to have conferred upon him the attributes and powers inherent in the character so bestowed. Such an agent, the law denominates, for convenience sake, a general agent.'

---

[2]It should be noted that the record is silent on various facts. The record does not contain any evidence from the alleged agent, Mr. Daliesso. Furthermore, there is no evidence about the actions of PRMI when it learned of these contracts, *i.e.*, whether it immediately notified BellSouth of its denial of the contracts or whether it simply refused to pay the bill. While helpful, these facts are not necessary to our analysis.

[3]The Directory Advertising Order names "Primary Residential Mortgage" as the customer, the customer signature is Craig Daliesso, but in the blank requiring the "Customer Title," Mr. Daliesso is described as "Mgr.-owner." The parties, however, have not raised this fact as bearing on Mr. Daliesso's authority or BellSouth's good faith, so we will not place particular emphasis on it either.

*O'Shea*, 405 S.W.2d at 183.

The Branch Manager Agreement is evidence that Mr. Daliesso had authority to represent PRMI in a general way. Mr. Daliesso's Branch Manager Agreement provides that he is the branch manager for PRMI in Franklin responsible for originations, processing and selling mortgages. Mr. Daliesso is entitled to all commissions generated from processing and selling all loans generated at the branch after PRMI receives its cut. The mortgages in question appear to have been funded by PRMI. The branch manager is required to execute any documentation necessary for credit and background checks and to use his best efforts to insure that the information provided PRMI about the loans are complete, accurate, and properly supported. The branch manager agrees that he will only use PRMI as a lender. The Agreement provides that the branch manager is to submit "necessary ordinary anticipated day-to-day expenses" of the branch to PRMI for payment with "appropriate documentation." As branch manager, Mr. Daliesso is expressly given the authority to hire, fire, and supervise the employees.

Once an agent is appointed to transact business on behalf of a principal, such an agent "will usually possess the authority to carry out those acts which are commensurate to his position." *Gale Smith & Company, Inc. v. The Governors Club, L.L.C.*, M2001-01616-COA-R3-CV, 2002 WL 31094849, at *3 (Tenn. Ct. App. Sept. 20, 2002) (no Tenn. R. App. P. 11 application filed). Although the agent's authority may be limited by the principal, if a party to a contract executed by the agent is unaware of that limitation, the party may "rely on the agent's apparent authority to take those actions which are commensurate with his position." *Id.* The Supreme Court explained the basis behind this principle in *O'Shea* as follows:

> On the other hand, where the agent is authorized to transact all the principal's business of a certain kind, or all the acts of a certain class, the very breadth of the employment, the duration of time involved and the variety of the duties to be performed necessarily involve more or less of discretion and choice of methods, and render impracticable, if not impossible, much of particularity or precision, either as to the exact means and method to be employed, or as to the scope or extent of the authority itself. Where so little is expressed, more may well be implied. The fact of such an authority, of itself, presupposes a general confidence bestowed upon the agent, and a general committal to his discretion and judgment of all beyond the essential objects to be attained and the outlines of the course to be pursued. It may not unreasonably be presumed, where nothing is indicated to the contrary, that such an agent possesses those powers which are commensurate with his undertaking, and which are usually and properly exercised by other similar agents under like circumstances. This presumption may well be and is constantly relied upon by persons dealing with such agents, and so reasonable, proper and necessary is this reliance, that it may justly be required that if the principal would impose unusual restrictions upon the authority of such an agent, he should make them known to persons who may have occasion to deal with the agent. And herein, it is believed, lies the true distinction between these two classes of authority [general and special agent]. One is in its nature temporary, special and naturally suggests limitations of power [special agent]. Of these limitations thus suggested third persons must inform

themselves, unless the principal has by his words or conduct held out the agent as one upon whose authority such limitations are not imposed. **The other [general agency] is, in its nature, general, continuing and unrestricted by other limitations than those which confine the authority within the bonds of what is usual, proper and necessary under like circumstances. If there are other limitations, the principal must disclose them.**

Neither of these rules denies even to the special authority its natural and ordinary incidents, and neither dispenses with that which devolves upon every person the duty of ascertaining not only the fact of the agency but also the nature and extent of the authority which the principal has apparently conferred. And neither of them permits the authority to be defeated by secret limitations.

*O'Shea*, 405 S.W.2d at 183-84 (emphasis added).

Mr. Daliesso was the branch manager for the PRMI with the type of broad continuing authority to act on behalf of PRMI which constituted a general agency. Although PRMI limited his authority to contract, the record is silent on any action taken by PRMI to disclose to others that this limitation about contracts existed. Consequently, BellSouth relied upon Mr. Daliesso's apparent authority in good faith.

In addition, while apparent agency is created by the principal, the agent's representations bear on a party's good faith reliance. If Mr. Daliesso had denied or expressed skepticism about his authority to bind BellSouth, then clearly BellSouth would lack a good faith belief in his authority. BellSouth's representative asked Mr. Daliesso about the agency which Mr. Daliesso confirmed. Given that Mr. Daliesso had no apparent reason to deceive BellSouth about his authority, his affirmance of the agency goes to BellSouth's good faith. Obviously, had it benefitted Mr. Daliesso in some way to confirm the agency, then that fact would undercut any good faith reliance by BellSouth on the agent's word and place upon BellSouth the obligation to inquire further.

Another factor in the good faith analysis is whether it is reasonable to believe that as branch manager Mr. Daliesso was authorized to purchase local advertising. It should be borne in mind that the contracts in question were for advertising the Franklin PRMI branch office ostensibly to produce business for that office. Consequently, the contracts benefitted the local PRMI branch office that Mr. Daliesso managed.

For the foregoing reasons, the summary judgment granted BellSouth is affirmed. Costs of this appeal are assessed against the appellant, PRMI.

_____
PATRICIA J. COTTRELL, JUDGE